**In re SCOPE DISPLAY & BOX CO., INC., Debtor.**

**Louis A. GEREMIA, Trustee, Plaintiff,**

**v.**

**RHODE ISLAND PLASTICS COMPANY, INC., Defendant.**

**Bankruptcy BK No. 8000894.**
**AP No. 820345.**

United States Bankruptcy Court,
D. Rhode Island.

Dec. 23, 1982.

E. Martin Stutchfield, Winograd, Shine & Zacks, P.C., Providence, R.I., for plaintiff.

Michael A. DeSisto, Rossi, Kelaghan & DeSisto, Providence, R.I., for defendant.

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

## DECISION

Heard on October 25, 1982 on the Trustee's Complaint against Defendant Rhode Island Plastics Company, Inc., on two counts of breach of warranty.

The Debtor, Scope Display and Box Co., Inc. (Scope), filed a Chapter 11 petition on November 25, 1980. Scope fabricates jewelry display cases and has purchased plastic for several years from the Defendant, Rhode Island Plastics Company, Inc. (Rhode Island Plastics), a wholesaler. The Trustee for Scope brings this action to recover damages resulting from the Defendant's alleged breach of warranty in delivering non-conforming goods.

## COUNT I

In Count I the Plaintiff asserts that Scope purchased sheets of one inch plexi-glass from the Defendant in 1980; that Scope discovered during the fabricating process that the plexi-glass was non-conforming in that its thickness exceeded usual tolerances; and that Scope was forced to expend $500 for additional labor to render the materials useable. The President of Scope, Victor Wilbert, testified that he promptly notified Rhode Island Plastics once the defect was discovered, and that he was assured that the problem would be resolved. Scope relies heavily on a written statement on the Defendant's July 16, 1980 bill of lading that Rhode Island Plastics would make "further credit adjustments." (Exhibit E.) Five days later, on July 21, Scope billed Rhode Island Plastics $500 for "Labor and Machine useage [*sic*] due to the receipt of non-conforming material to that which was specified." (Exhibit A.)

The full statement on the July 16 bill of lading, which appears below a reference to three sheets of ⅞ inch plexi-glass, reads:

> Above shipped in exchange for 5 pieces of 1.000 [inches] acrylic picked up at time of this delivery, upon receiving the 5 pieces at our plant we will make any further credit adjustments.

1. It is clear that the goods were accepted. R.I. Gen.Laws § 6A–2–606 provides in part:

   6A–2–606. *What constitutes acceptance of goods.*
   (1) Acceptance of goods occurs when the buyer
       (a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity....

John Quinn, Jr., Vice President of Rhode Island Plastics, testified that he had procured ⅞ inch plexi-glass especially for Scope, and agreed to take back the one-inch material when the ⅞ inch plexi-glass— which Scope ordered—was available. Thus, according to the Defendant, the uncut sheets of one-inch plexi-glass were returned, not because they were defective, but because Scope preferred ⅞ inch material. This explanation is plausible and is accepted.

It is undisputed, however, that some of the plexi-glass which the Defendant delivered to Scope did exceed normal tolerances. Scope returned 54 cut pieces of plexi-glass to Rhode Island Plastics for that reason, but Rhode Island Plastics found that only nine of the 54 pieces exceeded normal tolerances. At the hearing, Scope did not dispute the Defendant's assertion that only nine of the 54 allegedly defective pieces exceeded normal tolerances, nor did Scope contradict the Defendant's statement that some restitution was made for the defective cut pieces; so the question of damages for these nine cut pieces is not at issue.

■■■ With respect to accepted goods,[1] "The burden is on the buyer to establish any breach...." R.I.Gen.Laws § 6A–2–607(4). Furthermore, " 'Burden of establishing' a fact means the burden of persuading the triers of fact that the existence of the fact is more probable than its non-existence." R.I.Gen.Laws § 6A–1–201(8). After considering the evidence, the demeanor of the witnesses, and the arguments of counsel, I find that the Plaintiff has failed to meet its burden of proving that the alleged breach of warranty occurred, and that the Defendant is not liable for damages as alleged in Count I.

Scope notified Rhode Island Plastics that it would retain most of the plexi-glass despite the alleged non-conformity. With respect to the plexi-glass which it retained, the burden is on Scope to establish any breach. R.I.Gen.Laws § 6A–2–607(4). Official Comment 6 to § 6A–2–607 reads in part as follows: "Subsection (4) unambiguously places the burden of proof to establish breach on the buyer after acceptance."

## COUNT II

In Count II the Plaintiff asserts that Scope purchased clear plexi-glass with a paper mask finish from Rhode Island Plastics in May 1980. Scope fabricated 220 jewelry display cases for a customer, Tacoa, Inc., which on July 22, 1980 rejected 78 of the cases because of a pink tint or cast in the plexi-glass cases. Scope asserts that it ordered and paid for clear plexi-glass from Rhode Island Plastics, and that the product was non-conforming because of the pink tint. Scope issued a credit to Tacoa in the amount of $1677 (78 cases at $21.50 per case) on August 25, 1980 and seeks that amount in damages (plus costs and interest) from Rhode Island Plastics.

The factual issue is whether the plexi-glass which the Defendant delivered to Scope was non-conforming, due to a pink tint. It is undisputed that Scope accepted the plexi-glass, that Scope's customer rejected the finished display cases (of which plexi-glass is the main component), and that the 78 cases in question did have a pink cast. The burden is on Scope, the buyer, to establish a breach of warranty.[2]

The basis of Scope's argument is that all of the plexi-glass used in the assembly of the Tacoa display cases was ordered from Rhode Island Plastics; that Scope did nothing which caused a pink tint in the display cases; and that Scope had no duty or opportunity to inspect the plexi-glass prior to acceptance because the material necessarily remained masked until the fabrication of the display cases was completed. Rhode Island Plastics responds with two alternative defenses: (1) that the tinted plexi-glass was purchased, not from the Defendant, but from another supplier; or (2) that Scope's fabrication of the cases, most likely through the use of contaminated glue or cement, caused the tinting. The Defendant argues that since only 78 of 220 display cases were rejected by Tacoa as tinted, it follows that much of the plexi-glass used was clear. The Defendant presented testimony indicating a high probability that the 70 sheets of plexi-glass which it supplied to Scope originated from the same "batch" in the production process, and that if *any* sheets from a batch were tinted, then *all* sheets from that batch would have a similar tint. Scope agrees that some of the plexi-glass used in this job was untinted. After considering the testimony, the exhibits, and the arguments of counsel, the Court finds that the tint in the display cases resulted either from Scope's use of plexi-glass received from a supplier other than Rhode Island Plastics, or during the fabrication process, most likely through Scope's use of contaminated glue or cement. After weighing the conflicting evidence, the Court finds that the Plaintiff has not met its burden of establishing that the plexi-glass supplied by Rhode Island Plastics was tinted, and consequently that the Plaintiff has not established a breach of warranty by the Defendant as to Count II of its complaint.

## CONCLUSION

For the foregoing reasons, the Plaintiff's complaint is denied as to both Counts I and II, and Judgment should enter for the Defendant.

---

2. *See* note 1 *supra* and accompanying text.